**Robert McCHRISTIAN**

v.

**STATE of Tennessee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Assigned on Briefs May 4, 2004.

Sept. 15, 2004.

No Permission to Appeal Applied for to the Supreme Court.

Robert McChristian, Appellant, Pro Se.

Paul G. Summers, Attorney General & Reporter; and Thomas E. Williams, III, Assistant Attorney General, for the Appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON, J., filed a concurring opinion.

The petitioner, Robert McChristian, appeals from a summary dismissal of his petition for *habeas corpus* relief. We affirm.

The petitioner sought *habeas corpus* relief in the Lauderdale County Circuit Court from his 1992 Giles County sentence for aggravated burglary. In the Giles County conviction proceeding, the petitioner had pleaded guilty to a Class C charge of aggravated burglary and agreed to a twelve-year, Range I sentence. In his *habeas corpus* petition, the petitioner alleges that he was unaware that the range of punishment for a standard, Range I offender in a Class C felony is three to six years. *See* Tenn.Code Ann. § 40–35–112(a)(3) (2003). The petitioner claimed that his twelve-year sentence was outside his applicable and designated sentencing range and renders his sentence void, such that he is entitled to *habeas corpus* relief. The court below, holding that the petitioner's sentence fell with the broad range of sentences for Class C offenses, *see id.* § 40–35–111(a)(3) (2003) (authorizing sentences for Class C offenses from a minimum of three years to a maximum of fifteen years), summarily dismissed the petition without appointing counsel and without conducting a hearing.

■ The legal issues raised in a *habeas corpus* proceeding are questions of law, and our review of questions of law is *de novo*. *Hart v. State*, 21 S.W.3d 901, 903 (Tenn.2000) ("[W]hether to grant the petition [for *habeas corpus* relief] is a question of law that we review *de novo*."); *State v. Hill*, 954 S.W.2d 725, 727 (Tenn.1997)

(question of law reviewed on appeal *de novo* ).

We begin with a review of *habeas corpus* law as it presently exists in Tennessee. *Habeas corpus* relief is available only when the aggrieved party's conviction is void or the sentence has expired. *See Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). The petitioner in the present case makes no allegation that his sentence has expired;[1] he only claims that his sentence, and hence his conviction judgment, is void.

A void conviction is one which strikes at the jurisdictional integrity of the trial court. *Id.; see State ex rel. Anglin v. Mitchell*, 575 S.W.2d 284, 287 (Tenn.1979); *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn.Crim.App.1994). Because in this case the trial court apparently had jurisdiction over the *actus reus*, the subject matter, and the person of the petitioner, the petitioner's jurisdictional issue is limited to the claim that the court was without authority to enter the judgment. *See Anglin*, 575 S.W.2d at 287 (" 'Jurisdiction' in the sense here used, is not limited to jurisdiction of the person or of the subject matter but also includes lawful authority of the court to render the particular order or judgment whereby the petitioner has been imprisoned."); *see also Archer*, 851 S.W.2d at 164; *Passarella*, 891 S.W.2d at 627.

The invalidity of the sentence itself, as well as the broader invalidity of the conviction, results in a void judgment and is a sufficient basis for *habeas corpus* relief. *See Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn.2000) (a void sentence, as well as a void conviction, may result in a void judgment and be the subject of a *habeas corpus* proceeding). For an illegal sentence claim to support a claim for *habe-as corpus* relief, however, the illegality of the sentence must be egregious to the point of voidness. *Cox v. State*, 53 S.W.3d 287, 292 (Tenn.Crim.App.2001). Thus, mere clerical errors in the terms of a sentence may not give rise to a void judgment. *See, e.g., Ronald W. Rice v. David Mills*, No. E2003–00328–CCA–R3–PC, slip op. at 3–4, 2003 WL 21972930 (Tenn.Crim. App., Knoxville, Aug. 19, 2003) (trial court erred in designating on the judgment form that the petitioner was sentenced under the 1982 sentencing law, when the 1989 law applied to Rice's case; the 1989 law was *actually* applied in Rice's case, and the resulting sentence was "not void and the petitioner [was] not entitled to *habeas corpus* relief"), *perm. app. denied* (Tenn. 2004).

Relative to the egregiousness of the sentencing defect, our supreme court in *McLaney v. Bell*, 59 S.W.3d 90 (Tenn. 2001), said that an "illegal" sentence equates to a "jurisdictional defect." *Id.* at 92. However, in *McConnell v. State*, 12 S.W.3d 795, 798 (Tenn.2000), the supreme court said broadly, albeit in addressing plea-bargain negotiations that issues of "offender classification and release eligibility" are "non-jurisdictional." *See Hicks v. State*, 945 S.W.2d 706 (Tenn.1997) (a plea bargained Range II sentence is valid when coupled with Range I release eligibility); *Bland v. Dukes*, 97 S.W.3d 133, 135 (Tenn. Crim.App.2002) (aggravated robbery sentence upheld, despite sentence length falling in range above petitioner's range classification), *perm. app. denied* (Tenn.2002); *State v. Terry*, 755 S.W.2d 854, 855 (Tenn. Crim.App.1988) (applying 1982 sentencing law and upholding plea-bargained kidnapping sentence, the terms of which fit within the broad range of punishment for the

---

1. The petitioner has other convictions in which a seven-year sentence runs consecutively to the twelve-year sentence.

offense class). Nevertheless, "[t]he 1989 Act establishes the outer limits within which [a sentence may be fashioned], and the courts are bound to respect those limits." *McConnell,* 12 S.W.3d at 799; *see, e.g., William Boyd v. State,* No. E1999–02179–CCA–R3–PC, slip op. at 5–6, 2000 WL 1661526 (Tenn.Crim.App., Knoxville, Nov. 6, 2000) (100 percent release eligibility is beyond the outer limits of release eligibility percentage for even career offenders, and sentence is subject to *habeas corpus* attack); *see also Stephenson,* 28 S.W.3d at 911–12 (first-degree murder sentence expressed as life sentence without possibility of parole subject to *habeas corpus* relief when, at the time of the offense, a life sentence without the possibility of parole was not possible).

■ The sentence designated as Range I in the present case exceeds the six-year maximum sentence for a Range I offender in a Class C offense, *see* Tenn.Code Ann. § 40–35–112(a)(3) (2003), but the imposed sentence is less than the maximum, fifteen-year sentence for Class C offenses through the career offender-classification, *see id.* § 40–35–111(b)(3) (2003). Thus, the question squarely presented by the present case is whether the trial court had jurisdiction to impose an agreed-upon sentence the length of which exceeded the maximum sentence in the designated *offender* sentencing range but not the total maximum for the *offense* class.

Our law on this issue is at present somewhat muddled. *William Boyd* interpreted *Hicks* and *State v. Mahler,* 735 S.W.2d 226 (Tenn.1987), to mark the "outer limits" of the trial court's jurisdiction at the maximum sentence for the offense class and struggled to reconcile these cases with *McConnell's* statement that, although offender classification and release eligibility are non-jurisdictional, sentence length *is* jurisdictional. *See William Boyd,* slip op. at 4. *Compare Mahler,* 735 S.W.2d at 228 (approving sentence that was "within statutory limits fixed for the *offense* of murder in the second degree") (emphasis added), *with McConnell,* 12 S.W.3d at 798 (characterizing *Mahler* as approving a sentence because it was "within the statutory limits fixed for a Range II *offender* ") (emphasis added). In *William Boyd,* this court followed *Mahler* and *Hicks*—and distinguished *McConnell*—in essentially fixing the outer limits for purposes of sentence length at the maximum in the offense class. Moreover, this court followed *William Boyd* in *Bland,* a case in which an extra-range sentence was approved. *See Bland,* 97 S.W.3d at 135–36. As indicated above, the supreme court denied permission to appeal in *Bland.* In sum, we believe *Bland* and *William Boyd* provide the prevailing perspective on *McConnell.* From that perspective, the trial court in the present case had jurisdiction to impose the agreed-upon twelve-year sentence. That being the case, the sentence is not void and is not subject to collateral attack via a petition for writ of *habeas corpus.*

■ We realize that the petitioner complains that he was unaware that a Range I offender for a Class C offense was subject to a maximum sentence of six years. In essence, this claim is one of an unknowing or involuntary guilty plea. A petition for *habeas corpus* relief is not the proper means for addressing a claim of an unknowing or involuntary guilty plea. *Archer,* 851 S.W.2d at 163. The proper method for making a collateral attack of this nature is a petition pursuant to the Post–Conviction Procedure Act. *Id.; see* Tenn. Code Ann. §§ 40–30–101 through 122 (2003). In the present case, however, we are without the option of treating the *habeas corpus* petition as an action for post-conviction relief because the post-conviction one-year statute of limitations bars

post-conviction relief. Tenn.Code Ann. § 40–30–102 (2003).

For the foregoing reasons, the judgment below is affirmed.

JOSEPH M. TIPTON, J., concurring.

I concur in the majority opinion, but I question its reliance upon the fact that our supreme court denied permission to appeal in *Bland v. Dukes* to validate *Bland's* holding. Our supreme court has advised us not to attach significance to such a denial. *See Meadows v. State*, 849 S.W.2d 748, 752 (Tenn.1993).

*Bland v. Dukes*, 97 S.W.3d 133 (Tenn. Crim.App.2002), essentially interprets *McConnell v. State*, 12 S.W.3d 795 (Tenn. 2000), narrowly for the purpose of reconciling facially contradictory cases. In *State v. Terry*, 755 S.W.2d 854 (Tenn.Crim.App. 1988), pursuant to a plea agreement, the defendant was sentenced under the 1982 Sentencing Reform Act as a Range I, standard offender to ten years for kidnapping. The range of punishment for kidnapping was two to ten years with a Range I sentence being two to six years and a Range II sentence being six to ten years. The defendant then moved to correct the sentence, claiming that it was illegal. However, this court held the ten-year sentence to be legal because it was "within the statutory penalty for kidnapping." *Id.* at 855.

In *Joseph Harvey Cutright v. State*, No. 02C01–9108–CC–00175, Henderson County, 1992 WL 56803 (Tenn.Crim.App. Mar. 25, 1992), *app. denied* (Tenn. Aug. 31, 1992), the petitioner pled guilty to second degree murder and was sentenced under the 1982 Sentencing Reform Act as a Range II offender to fifty years, even though the 1989 Sentencing Reform Act was in effect. Under the 1982 Act, a Range I sentence for second degree murder was ten to thirty-five years, and a Range II sentence was thirty-five years to life. The petitioner sought post-conviction relief arguing that his sentence was illegal. This court, relying on *Terry*, disagreed and held that the sentence was proper. Slip op. at 5. However, in denying the petitioner's application to appeal, the Tennessee Supreme Court remanded the case on the basis that the petitioner should have been sentenced under the 1989 Act. In addition, the court noted that the petitioner's fifty-year sentence under the 1982 Act was a nullity because the maximum sentence a Range II offender could receive under the 1989 Act was forty years. *See Joseph Harvey Cutright v. State*, 02C01–9018–CC–00175, Henderson County, 1992 WL 56803 (Tenn.Crim.App. Mar. 25, 1992) (order). In other words, the supreme court ignored the fact that the statutory maximum for second degree murder under the 1989 Act was sixty years. *See* T.C.A. § 40–35–111(d)(1).

In *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997), pursuant to a plea agreement, the petitioner pled guilty to voluntary manslaughter, a Class C felony, and was sentenced under the 1989 Act as a Range II offender to ten years but with a Range I release eligibility of thirty percent. Under the 1989 Act, a Range I sentencing range for a Class C felony is three to six years and for a Range II sentence is six to fifteen years. *See* T.C.A. § 40–35–112(a)(3), (b)(3). The opinion indicates that the petitioner was sentenced "to the Department of Correction for ten years as a Range I standard offender with a release eligibility of thirty percent." *Id.* at 706. The petitioner sought post-conviction relief claiming that the "hybrid" sentence, combining one range of punishment with a different range for release eligibility, was illegal. Our supreme court disagreed, citing with approval and relying upon the reasoning in *Terry*. 945 S.W.2d at 707,

709. In its analysis, the court noted its order in *Joseph Harvey Cutright*, but it limited the significance of that case by stating that Cutright's sentence had been improper because he was sentenced under the 1982 Act and not because the sentence had exceeded the range of punishment for a Range II offender. 945 S.W.2d at 708–09 & n. 9.

Then, in *McConnell v. State*, 12 S.W.3d 795 (Tenn.2000), the petitioner pled guilty to second degree murder, a Class A felony, and six counts of aggravated robbery, a Class B felony. Pursuant to a plea agreement, the trial court sentenced him in November 1990 under the 1982 Sentencing Act as a Range I offender to thirty-five years for the murder conviction, ten years each for five robbery counts, and thirty-five years for the sixth robbery count. The petitioner sought post-conviction relief from his two thirty-five-year sentences, arguing that they were improper because the range of punishment for a Range I offender under the 1989 Act was fifteen to twenty-five years for a Class A felony and eight to twelve years for a Class B felony. First, the court noted that sentences after November 1, 1989, were required to be sentenced under the provisions of the 1989 Act. 12 S.W.3d at 797; *see* T.C.A. § 40–35–117(b). In response to the state's claim that, under *Hicks* the 1989 Act permitted the trial court to depart from the mandates of the 1989 Act, the court noted that *Hicks* had allowed for the mixing of an offender's sentencing range with a different range for release eligibility but that *Hicks* did not "condone departures from the maximum and minimum sentencing guidelines imposed by the 1989 Act." *Id.* at 798. Thus, the court concluded that the thirty-five-year sentences for a Range I offender were illegal. As the majority opinion notes, the court referred to the range of the offender, not the offense. In this regard, in a footnote, the supreme court revived its position in *Joseph Harvey Cutright* despite the fact that *Hicks* had limited *Cutright's* significance. 12 S.W.3d at 799 n. 5. In a second footnote, the court further revived *Cutright* by stating that although *Terry* had allowed "a plea bargain sentence that was in excess of the penalty imposed by statute, *Terry* had preceded *Cutright.*" *Id.* at 799 n. 6. This implies that the court looked upon *Terry* with disfavor as opposed to *Cutright.*

To summarize this line of cases, *Hicks* relies on *Terry*, which *McConnell* indicates is incorrect given *Joseph Harvey Cutright*, which is expressly limited by *Hicks* to a holding which is irrelevant to the issue. In this environment, this court decided *Bland v. Dukes*, 97 S.W.3d 133 (Tenn. Crim.App.2002), *app. denied* (Tenn.2002), in which the court was faced with a fifteen-year sentence as a Range I, standard offender for an aggravated robbery, a Class B felony, when the range of punishment for a Range I, Class B felon was only eight to twelve years. *See* T.C.A. § 40–35–112(a)(2). The petitioner relied on *McConnell* and the *Joseph Harvey Cutright* order to claim that his sentence was illegal. However, in affirming the petitioner's sentence, this court noted that *McConnell* had "cited *Hicks* with approval and affirmed that its decision did not alter 'the ability of the State and defendants to use offender classification and release eligibility as subjects of plea bargain negotiations.'" *Bland*, 97 S.W.3d at 135 (quoting *McConnell*, 12 S.W.3d at 798). Given *McConnell's* approval of *Hicks*, this court concluded that "the plea agreement in *McConnell* was nullified because it was expressed in terms of the 1982 Act, not because the number of years was outside the range." *Id.* *Bland* is controlling authority until its holding is reversed or modified by a court of competent jurisdiction. Tenn. Sup.Ct. R. 4(H)(2)

From a historical perspective, I believe sources for "muddling" the "mixed" sentence issue were the judgment form provided under the 1982 Act and the early judgment form under the 1989 Act. Neither provided the means to reflect a mix of sentencing range and release eligibility percentage. For example, the 1982 Act judgment provided boxes to check for "Standard 30% Range 1" or "Persistent 35% Range 2," while the 1989 judgment provided "Standard 30% Range 1" and "Multiple 35% Range 2." Such is the case in the present case—although the sentence length was twelve years, the release eligibility at thirty percent required checking the "Standard 30% Range 1" box. *See also Hicks,* 945 S.W.2d at 706 (indicating that the sentence was reflected as a "Range 1 Standard offender with a release eligibility of thirty percent"). However, the judgment form now being provided pursuant to Tenn. Sup.Ct. R. 17 has a set of boxes for offender status and another set of boxes for release eligibility. With this form, offender status is not automatically tied to a particular release eligibility percentage. Thus, the problems we encounter in the present case should not exist under the new judgment form.